1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thomas N. Millikan, Bar No. 234430
TMillikan@perkinscoie.com
Joseph P. Reid, Bar No. 211082
JReid@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA  92130-2080
Telephone:  858.720.5700
Facsimile:  858.720.5799

Andrew N. Klein, Bar No. 300221
AKlein@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

*Attorneys for Plaintiff*
Netskope, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

NETSKOPE, INC.,

                  Plaintiff,

    v.

FORTINET, INC.,

                  Defendant.

Case No.  22-cv-1852

**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 10,237,282, 9,225,734, 11,032,301, 10,826,941, 8,793,151, AND 9,197,601**

**JURY TRIAL DEMANDED**

1      This is an action for a declaratory judgment that Plaintiff Netskope, Inc. ("Plaintiff" or

2  "Netskope") does not infringe U.S. Patent Nos. 10,237,282, 9,225,734, 11,032,301, 10,826,941,

3  8,793,151, or 9,197,601 (collectively, the "Patents-in-Suit"), which have ostensibly been assigned

4  to Defendant Fortinet, Inc. ("Fortinet").  In support of this action, Netskope, by and through its

5  attorneys, alleges as follows:

6                                        **BACKGROUND**

7  **I.      Netskope Reluctantly Brings This Action.**

8      1.      Because of Fortinet's repeated threats of litigation and steadfast refusal to provide

9  support for its accusations of patent infringement, Netskope has no viable alternative but to bring

10  this declaratory judgment action.

11      2.      For months, Fortinet has repeatedly threatened to sue Netskope for patent

12  infringement.  During that time, Netskope has repeatedly requested the basis for Fortinet's threats

13  and support for its exorbitant settlement demands.  At every turn, Fortinet has flatly refused

14  Netskope's requests for this basic information.

15      3.      Specifically, Fortinet has been unwilling to identify the individual patent claims it

16  thinks Netskope infringes, the specific Netskope products it believes are infringing, or to provide

17  infringement charts illustrating its infringement allegations.

18      4.      Similarly, Fortinet has refused to provide any evidence or calculations to support

19  its demand for $100 million in damages.

20      5.      Despite Fortinet's bad-faith negotiation techniques and unreasonable financial

21  demands, Netskope has tried for months to find common ground for a reasonable business

22  resolution.  Taken together, Netskope has made at least four overtures to Fortinet attempting to

23  conduct a good-faith dialogue, yet those efforts have been met with nothing but silence and

24  stonewalling.

25      6.      As it has become clearer that Fortinet's negotiations were merely pretext to bully

26  Netskope—as Fortinet has done to other companies in the past—Netskope has realized it has no

27  choice remaining but to bring this lawsuit to protect its customers, company, and investors.

28  Accordingly, it files this complaint seeking declaratory relief.

COMPLAINT FOR DECLARATORY
                                                     JUDGMENT OF NON-INFRINGEMENT

**II.      Netskope's Innovation in Cloud Security Has Made It a Market Leader Since 2012.**

7.      Netskope has been an innovator in cloud-security services since the company's inception in 2012.

8.      While conventional network security devices (e.g., firewalls) existed at that time, those devices had become antiquated and were ill-suited as more applications and services moved to the cloud.

9.      Recognizing this growing and unfulfilled market, Netskope worked to develop a comprehensive, homegrown computer security platform that would help businesses manage and secure their applications and services as they migrated to the cloud.

10.      Netskope successfully released its first product in 2013 and has continued to innovate ever since.  Today, Netskope's homegrown security platform offers a vast range of innovative services, from real-time analytics to access security measures.

11.      As part of its cloud-security platform, Netskope offers behavior analytics and Data Loss Prevention (DLP) services.

12.      Netskope's cloud-based behavior analytics service monitors and tracks user activity across cloud applications, services, and websites.  Netskope's behavior analytics service provides companies with a helpful tool to detect and flag certain user behavior.

13.      As another part of its innovative platform, Netskope offers cloud-based DLP services.  Those services help companies protect confidential information from loss, exfiltration, and inadvertent public disclosure by identifying documents that contain confidential information and handling them according to defined policies.

14.      While other companies have started offering cloud-security services, Netskope differentiates itself by offering a proven security platform that is data-centric, cloud-smart, and fast.

15.      Because Netskope's products are visionary and high-quality, many innovative and prominent companies, including Fortune 500 companies in multiple market verticals, use them. Netskope's behavior analytics and DLP services are currently offered to and used by customers who reside in the United States, including in this Judicial District.

COMPLAINT FOR DECLARATORY
                                                          JUDGMENT OF NON-INFRINGEMENT

16.     The industry has praised Netskope and its visionary products for their excellence. For example, Netskope has been recognized by Forbes on its list of the top 100 private cloud companies and Gartner in its Magic Quadrant reports.

17.     At the product level, the industry has praised Netskope's industry-leading work in behavior analytics and Data Loss Prevention.  For example:

a.     Business Intelligence Group recognized Netskope in the Data Protection—Enterprise category for the 2020 Fortress Cyber Security Awards;

b.     Cyber Defense Magazine named Netskope a winner of two 2020 InfoSec Awards, including a win in the category of Data Loss Prevention;

c.     The Cybersecurity Excellence Award was awarded to Netskope in the Data Leakage Prevention category;

d.     Security Products selected Netskope's Cloud DLP services as the Product of the Year; and

e.     CRN selected Netskope's Threat Protection Services as the Overall Winner for Product of the Year.

**III.     Fortinet Is a Market Follower Who Buys Its Way into New Markets, Including Cloud Security.**

18.     While Netskope innovated its way into being a leader in cloud security, Fortinet was forced to buy its way in after its firewall business began to fail.

19.     Founded in 2000, Fortinet started in the now-antiquated field of physical firewalls. By 2010, Fortinet faced headwinds due to waning demand for its products and services and increased competition, among other things.[1]

20.     Fortinet also faced grave financial issues with its history of losses, potential inability to maintain its short-term profitability, and threats to revenue growth.[2]

---

[1] Fortinet, Inc., Ann. Rep. (Form 10-K) (Mar. 5, 2010), 18 (available at https://investor.fortinet.com/node/13891/html) (last visited Feb. 7, 2022).
[2] *Id.*

21.     Fortinet explained that its trailing market position was due, in part, to a "network security market [that] [was] rapidly evolving."

22.     Fortinet warned that "[i]f it [did] not quickly respond to the rapidly changing and rigorous needs of [its] end-customers by developing and releasing and making available on a timely basis new products and services or enhancements that [could] respond adequately to new security threats, [its] competitive position and business prospects [would] be harmed."[3]

23.     To do so, Fortinet decided to "acquire additional businesses, products, or technologies and intellectual property, such as patents," to improve its trailing market position.[4] In other words, Fortinet planned to buy the innovations of others to remain competitive.

24.     By all accounts, that is exactly what Fortinet did.  Since 2010, Fortinet has acquired the innovations of at least thirteen companies, six of which were in cloud security: ZoneFox[5], enSilo[6], OPAQ[7], Panopta[8], ShieldX[9], and CyberSponse.[10]

25.     While Fortinet hoped its spending spree would vault it to the top of the cloud-security market, that has not occurred.

---

[3] *Id.* at 33.

[4] *Id.* at 32.

[5] Michael Novinson, *Fortinet Buys Threat Analytics Startup ZoneFox To Fight Insider Threats*, THE CHANNEL COMPANY (Oct. 23, 2018), https://www.crn.com/news/security/fortinet-buys-threat-analytics-startup-zonefox-to-fight-insider-threats; Fortinet, *Fortinet Acquires ZoneFox* (Oct. 23, 2018), https://www.fortinet.com/blog/business-and-technology/fortinet-acquires-zonefox.

[6] Charlie Osborne, *Fortinet acquires enSilo in endpoint security portfolio push*, ZDNET (Oct. 29, 2019), https://www.zdnet.com/article/fortinet-acquires-ensilo-in-endpoint-security-portfolio-push/; Michael Novinson, *Fortinet Buys Cybersecurity Startup enSilo To Boost Endpoint Defenses*, THE CHANNEL COMPANY (Oct. 28, 2019), https://www.crn.com/news/security/fortinet-buys-cybersecurity-startup-ensilo-to-boost-endpoint-defenses.

[7] NetSec Editor, *Fortinet Acquires Cloud Security Startup Opaq*, NETSEC.NEWS (Jul. 21, 2020), https://www.netsec.news/fortinet-acquires-cloud-security-startup-opaq/.

[8] Joe Panettieri, *Fortinet Acquires Panopta; MSSP Partners Gain Cybersecurity Network Monitoring*, MSSP ALERT (Dec. 8, 2020), https://www.msspalert.com/investments/fortinet-acquires-panopta/.

[9] Michael Novinson, *Fortinet Acquires Cloud And Network Security Startup ShieldX*, THE CHANNEL COMPANY (Mar. 20, 2021), https://www.crn.com/news/security/fortinet-acquires-cloud-and-network-security-startup-shieldx.

[10] Joe Panettieri, *Fortinet Acquires SOAR Provider CyberSponse: CEO Explains MSSP Partner Benefits*, MSSP ALERT (Dec. 12, 2019), https://www.msspalert.com/investments/fortinet-buys-cybersponse/.

26.     Fortinet's cloud application security broker (CASB) product is an example of its inability to buy its way to the top.

27.     Fortinet first launched its CASB in 2017, several years after many leading innovators in the industry, including Netskope.[11]

28.     In addition to being late to market, Fortinet's CASB product lacked important features important to a well-performing CASB.

29.     Unlike its competitors in the CASB market, Fortinet did not have a Zero Trust Network Access (ZTNA) cloud solution.

30.     Rather than developing a ZTNA cloud solution internally, Fortinet acquired OPAQ and its ZTNA cloud solution to enhance Fortinet's existing Secure Access Service Edge cloud-security platform.

31.     But even after buying the innovations of OPAQ, Fortinet's CASB product did not rise to the top of the market.  In Gartner's October 2020 Magic Quadrant for CASBs (shown below), Fortinet is not even mentioned:



Source: Gartner (October 2020)

---

[11] *See* Jessica Lyons Hardcastle, *Fortinet Buys Opaq, Claims First Complete SASE Stack*, SDxCENTRAL (July 21, 2020), https://www.sdxcentral.com/articles/news/fortinet-buys-opaq-claims-first-complete-sase-stack/2020/07/.

32.    Netskope, on the other hand, is identified as a market leader.

33.    Fortinet is a market follower in other areas.  For example, Fortinet is not mentioned in Gartner's February 2022 Magic Quadrant for Security Service Edge (shown below).



Source: Gartner (February 2022)

34.    Netskope is again identified as a market leader.

35.    In addition to products, Fortinet also buys other companies' patents.  As of December 31, 2009, for example, Fortinet had only 40 issued patents in its portfolio.[12]  Even at that point, Fortinet publicly conceded that it "purchased most of [its] issued U.S. patents and many of [its] pending U.S. patent applications from other entities."[13]

---

[12] Fortinet, Inc., Ann. Rep. (Form 10-K) (Mar. 5, 2010), 14 (available at https://investor.fortinet.com/node/13891/html) (last visited Feb. 7, 2022).
[13] *Id.*

**IV.     When Buying its Way into Cloud Security Failed, Fortinet Turned to Bullying.**

36.     After buying its way into a new market, Fortinet transitions to displacing incumbent market innovators through bullying and aggression.  Specifically, using its size, imposing patent portfolio, and threats of litigation, Fortinet tries to bully smaller market innovators into paying an exorbitant royalty for a license to Fortinet's patent portfolio.  If innovators resist, Fortinet sues them to force compliance.

37.     Fortinet has used this strategy before, most recently in its ongoing litigation with Forescout.[14]

38.     As Forescout has explained,[15] less than one month before Fortinet first contacted Forescout, Forescout publicly announced a major acquisition that would have helped its position in the market.[16]

39.     Realizing the potential leverage it could gain by threatening the acquisition, Fortinet sent Forescout a letter accusing it of patent infringement and demanding that it license Fortinet's patent portfolio.[17]

40.     In response, Forescout asked for more information to assess Fortinet's claim, including an identification of the allegedly infringed patents.  But, rather than engage Forescout in good faith, Fortinet deployed a series of strategic maneuvers to increase its leverage over Forescout.

41.     To begin, Fortinet refused to identify the specific patents Forescout allegedly infringed or provide any evidence of infringement.[18]  Rather, Fortinet justified its licensing demand by referencing Forescout's "well-capitalized acquirer."[19]  This information asymmetry deprived Forescout of any ability to assess Fortinet's infringement allegation.

---

[14] *Fortinet, Inc. v. Forescout Technologies, Inc.*, No. 3:20-cv-03343 (N.D. Cal. May 15, 2020).
[15] Answer to Am. Compl., and Countercl. against Pl. Fortinet, Inc., ¶ 137, *Fortinet, Inc. v. Forescout Technologies, Inc.*, No. 3:20-cv-03343, Dkt. No. 107 (N.D. Cal. July 6, 2021).
[16] *Id.* at ¶¶ 135-136.
[17] *Id.* at ¶ 137.
[18] *Id.*
[19] *Id.*

42.     Next, Fortinet initiated strategic litigation against Forescout.  One business day before Forescout was set to close its acquisition, Fortinet sued Forescout for infringing three patents Fortinet had never identified to Forescout.[20]  Fortinet's complaint contained express reference to Forescout being acquired.[21]

43.     At the same time, Fortinet engaged in an aggressive, concerted public relations campaign.  For example, Fortinet admits providing negative press statements to news outlets in order to disparage Forescout's reputation.[22]

44.     Fortinet also likely told Forescout's customers that Forescout's financial solvency was in doubt.  For example, Fortinet circulated a sample email that could be sent to customers considering Forescout that exposed Forescout's supposed financial woes.

45.     Fortinet's bullying strategy apparently worked.  Immediately after Fortinet sued Forescout and smeared it in the press, Forescout's acquirer, Advent, announced it would no longer proceed with the acquisition.[23]  And while Advent eventually acquired Forescout, it did so on terms much less favorable to Forescout.[24]

46.     In addition, potential and existing Forescout customers turned away from Forescout because of Fortinet's calculated maneuvers.[25]

**V.     Fortinet Is Attempting to Deploy the Same Bullying Strategy Against Netskope.**

47.     Fortinet's approach of Netskope follows the pattern of behavior Fortinet displayed in the Forescout litigation.

48.     On October 22, 2021, Fortinet sent Netskope a letter accusing Netskope of infringing three Fortinet patents: U.S. Patent Nos. 10,237,282; 9,225,734; and 11,032,301.

---

[20] *Id.* at ¶ 138.

[21] *Id.* at ¶ 139.

[22] Resp. re 107 Answer to Am. Compl., Countercl., Answer, Affirmative Defenses, and Countercls., ¶ 142, *Fortinet, Inc. v. Forescout Technologies, Inc.*, No. 3:20-cv-03343, Dkt. No. 135 (N.D. Cal. Dec. 13, 2022).

[23] Answer to Am. Compl. and Countercl. against Pl. Fortinet, Inc., ¶ 144, *Fortinet, Inc. v. Forescout Technologies, Inc.*, No. 3:20-cv-03343, Dkt. No. 107 (N.D. Cal. July 6, 2021).

[24] *Id.* at ¶ 146.

[25] *Id.*

49.     Fortinet's October 22, 2021 letter demanded that Netskope pay for a license to Fortinet's entire patent portfolio.

50.     Fortinet's October 22, 2021 letter claimed that an unidentified "competitor [had] paid Fortinet nine figures for a limited term license" to its patent portfolio.[26]

51.     Fortinet's October 22, 2021 letter did not identify the patent claims that Fortinet contended were infringed.

52.     Fortinet's October 22, 2021 letter did not identify any allegedly infringing Netskope products.

53.     After the initial letter, the parties had a call on December 13, 2021.

54.     During the December 13, 2021 call, Netskope indicated that Fortinet had not provided information to allow Netskope to assess Fortinet's infringement allegations.

55.     During the December 13, 2021 call, Netskope asked if Fortinet could provide information to help the assessment, such as allegedly infringing products or a claims chart detailing allegations.

56.     During the December 13, 2021 call, Netskope asked Fortinet for the quantitative basis for its financial demands.

57.     During the December 13, 2021 call, Fortinet did not identify the claims it contended Netskope infringed.

58.     During the December 13, 2021 call, Fortinet did not to identify the Netskope products it contended infringed.

59.     During the December 13, 2021 call, Fortinet did not to provide a claim chart.

60.     During the December 13, 2021 call, Fortinet did not provide any quantitative basis for its financial demands.

61.     Instead, during the December 13, 2021 call, Fortinet reiterated its licensing demand for the entire Fortinet portfolio at a fee of $100,000,000.

62.     Fortinet wrote Netskope on December 16, 2021.

---

[26] The letter also contained irrelevant and incorrect allegations about employees leaving Fortinet to work for Netskope that Fortinet has since abandoned.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

63.     Fortinet's December 16, 2021 email claimed it was "under pressure to settle or initiate a lawsuit … if Netskope [didn't] reach final agreement soon to settle..."

64.     Fortinet's December 16, 2021 email did not identify the patent claims that Fortinet contended were infringed.

65.     Fortinet's December 16, 2021 email did not identify any allegedly infringing Netskope products.

66.     Fortinet's December 16, 2021 email did not provide a claim chart.

67.     Fortinet's December 16, 2021 email did not provide any quantitative basis for its financial demands.

68.     Netskope responded on December 17, 2021.

69.     Netskope's December 17, 2021 email stated that Fortinet had only reiterated its demand for a $100 million payment without providing any evidence of infringement.

70.     Netskope's December 17, 2021 email made clear that Netskope respects Fortinet's intellectual property rights and was willing to pay what is appropriate.

71.     Netskope's December 17, 2021 email stated that Netskope was not aware of any infringement.

72.     Netskope's December 17, 2021 email stated that none of the three patents identified by Fortinet appeared relevant to Netskope.

73.     Netskope's December 17, 2021 email offered to create a process to assess what relevance, if any, Fortinet's patent portfolio had to Netskope's products.

74.     Fortinet responded on December 23, 2021.

75.     Fortinet's December 23, 2021 email did not identify the patent claims that Fortinet contended were infringed.

76.     Fortinet's December 23, 2021 email did not identify any allegedly infringing Netskope products.

77.     Fortinet's December 23, 2021 email did not provide a claim chart.

78.     Fortinet's December 23, 2021 email did not provide any quantitative basis for Fortinet's financial demands.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

79.     Rather, Fortinet merely responded: "Please let us know when we can expect a specific response."

80.     Fortinet emailed Netskope again on January 20, 2022.

81.     Fortinet's January 20, 2022 email threatened Netskope with litigation.

82.     Fortinet's January 20, 2022 email demanded that by January 24 at 5 p.m. Pacific, Netskope tell Fortinet whether Netskope would pay Fortinet $100,000,000 for a limited term license to Fortinet's portfolio.

83.     Fortinet's January 20, 2022 email threatened to initiate litigation if Fortinet did not receive a response from Netskope by its January 24 deadline.

84.     Fortinet's January 20, 2022 email attached a draft complaint accusing Netskope of patent infringement.

85.     Neither Fortinet's January 20, 2022 email nor its draft complaint identified the patent claims that Fortinet contended were infringed.

86.     Neither Fortinet's January 20, 2022 email nor its draft complaint identified any allegedly infringing Netskope products.

87.     Neither Fortinet's January 20, 2022 email nor its draft complaint provided a claim chart.

88.     Neither Fortinet's January 20, 2022 email nor its draft complaint provide any quantitative basis for Fortinet's financial demands.

89.     Fortinet's January 20, 2022 draft complaint did not identify the patents Fortinet contended were infringed.

90.     Fortinet's January 20, 2022 draft complaint left placeholders for the allegedly infringed patents and infringing Netskope products.

91.     Netskope responded on January 21, 2022.

92.     Netskope's January 21, 2022 email reiterated Netskope's commitment to respecting Fortinet's intellectual property and paying a royalty, if appropriate.

93.     Netskope's January 21, 2022 email reiterated that it was not aware of any infringement by Netskope and that Fortinet had not offered any evidence of infringement.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

94.    Netskope's January 21, 2022 email noted that Fortinet had continued to deprive Netskope of basic information to assess Fortinet's infringement accusation.

95.    Netskope's January 21, 2022 email again asked for an identification of the patents Fortinet believed Netskope was infringing.

96.    Netskope's January 21, 2022 email again asked for the claims of each patent Fortinet believed Netskope was infringing.

97.    Netskope's January 21, 2022 email again asked for an identification of the allegedly infringing Netskope products.

98.    Netskope's January 21, 2022 email again asked for claim charts.

99.    Netskope's January 21, 2022 email reiterated its commitment to a business resolution.

100.    Netskope's January 21, 2022 email proposed a business resolution in which Netskope would consider licensing a subset of Fortinet's portfolio at an adjusted royalty rate.

101.    Fortinet responded by email on January 21, 2022.

102.    Fortinet's January 21, 2022 email rejected the specifics of Netskope's business resolution.

103.    Fortinet's January 21, 2022 email provided no counteroffer.

104.    Fortinet's January 21, 2022 email threatened that Fortinet had even more patents it could assert against Netskope, but did not identify those additional patents.

105.    Fortinet's January 21, 2022 email did not identify the patent claims that Fortinet contended were infringed.

106.    Fortinet's January 21, 2022 email did not identify any allegedly infringing Netskope products.

107.    Fortinet's January 21, 2022 email did not provide a claim chart.

108.    Fortinet's January 21, 2022 email did not provide any quantitative basis for Fortinet's financial demands.

109.    Netskope responded on February 7, 2022.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

110.    Netskope's February 7, 2022 email reiterated Netskope's commitment to licensing any patents Netskope infringed based on an objective valuation of the patents.

111.    Netskope's February 7, 2022 email also reiterated that Fortinet had not provided a list of all the patents it contends Netskope infringes, the Netskope products it thinks are infringing for each patent, and how much Fortinet believes a non-exclusive license to each patent to be worth.

112.    Netskope's February 7, 2022 email made a simple request for a link to a web page identifying the allegedly infringing product(s).

113.    Netskope's February 7, 2022 email reiterated Netskope's commitment to a sensible business resolution.

114.    Fortinet responded on February 7, 2022.

115.    Fortinet's February 7, 2022 email claimed that Fortinet had given Netskope "a fair amount of information."

116.    Fortinet's February 7, 2022 email claimed that the information Netskope needed was "publicly available."

117.    Fortinet's February 7, 2022 email accused Netskope of infringing three more patents (U.S. Patent Nos. 10,826,941; 8,793,151; 9,197,601) and claimed there were more.

118.    Fortinet's February 7, 2022 email did not identify the patent claims from these three patents that Fortinet contended were infringed.

119.    Fortinet's February 7, 2022 email did not identify any Netskope products that allegedly infringe these three patents.

120.    Fortinet's February 7, 2022 email did not provide any links to a web page identifying the allegedly infringing Netskope products.

121.    Fortinet's February 7, 2022 email did not provide a claim chart.

122.    Fortinet's February 7, 2022 email did not provide any quantitative basis for Fortinet's financial demands.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

123.    Fortinet's February 7, 2022 email claimed that Netskope had "full knowledge of infringement" even though Fortinet had not identified an infringing product or allegedly infringed claim.

124.    Netskope responded on February 24, 2022.

125.    Netskope's February 24, 2022 email reiterated that Fortinet had not provided support for its infringement accusation.

126.    Netskope's February 24, 2022 email reiterated that Fortinet had not provided any claim charts.

127.    Netskope's February 24, 2022 email reiterated that Fortinet had not identified the allegedly infringed claims.

128.    Netskope's February 24, 2022 email reiterated that Fortinet had not identified the allegedly infringing Netskope products.

129.    Netskope's February 24, 2022 email reiterated that Fortinet had not provided any quantitative basis for its financial demands.

130.    Netskope's February 24, 2022 email claimed that Fortinet had not provided a settlement demand for licensing a subset of its patents.

131.    Netskope's February 24, 2022 email reiterated that Netskope was open to a reasonable business solution.

132.    Fortinet responded on February 28, 2022.

133.    In its February 28, 2022 email, Fortinet agreed to have a call with Netskope and asked who from Netskope would attend.

134.    Fortinet's February 28, 2022 email did not identify the patent claims Fortinet contended were infringed.

135.    Fortinet's February 28, 2022 email did not identify any Netskope products that allegedly infringed Fortinet's patents.

136.    Fortinet's February 28, 2022 email did not provide a claim chart.

137.    Fortinet's February 28, 2022 email did not provide any quantitative basis for Fortinet's financial demands.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

138.    On March 1, 2022, Netskope responded with who would attend the call from Netskope.

139.    Fortinet responded on March 9, 2022.

140.    Fortinet's March 9, 2022 email claimed that Fortinet had "provided Netskope with more than sufficient relevant information – including six Fortinet patents and a draft complaint – over many months now.  So [it] [would] limit the agenda to the reasonable business resolution … – i.e., the appropriate royalty for Netskope to pay Fortinet for a license to some or all of Fortinet's patents."

141.    Fortinet's March 9, 2022 email did not identify the patent claims Fortinet contended were infringed.

142.    Fortinet's March 9, 2022 email did not identify any Netskope products that allegedly infringed Fortinet's patents.

143.    Fortinet's March 9, 2022 email did not provide a claim chart.

144.    Fortinet's March 9, 2022 email did not provide any quantitative basis for Fortinet's financial demands.

145.    Netskope responded on March 11, 2022.

146.    Netskope's March 11, 2022 email reiterated that Fortinet had not provided specifics about its infringement allegations.

147.    Netskope's March 11, 2022 email reiterated its commitment to discuss a reasonable business resolution.

148.    Fortinet responded on March 11, 2022.

149.    Fortinet's March 11, 2022 email stated that it wanted to have a preliminary call to discuss the agenda for the call.

150.    Fortinet's March 11, 2022 email claimed that Fortinet had provided "ample information including a draft complaint and a number of examples of specific patents infringed."

151.    Fortinet's March 11, 2022 email claimed that Fortinet's "entire patent portfolio is public and Netskope and its outside counsel have had access to [Fortinet's] entire patent portfolio for a long time and have been on notice of [Fortinet's] detailed claims for months now."

COMPLAINT FOR DECLARATORY
                                          JUDGMENT OF NON-INFRINGEMENT

152.     Fortinet's March 11, 2022 email asked if Netskope would provide any remaining specific questions Netskope had.

153.     Fortinet's March 11, 2022 email did not identify the patent claims Fortinet contended were infringed.

154.     Fortinet's March 11, 2022 email did not identify any Netskope products that allegedly infringed Fortinet's patents.

155.     Fortinet's March 11, 2022 email did not provide a claim chart.

156.     Fortinet's March 11, 2022 email did not provide any quantitative basis for Fortinet's financial demands.

157.     Netskope responded on March 14, 2022.

158.     Netskope's March 14, 2022 email reiterated that Netskope was open to a license to any valid patents Netskope is using based on an objective valuation of the patents.

159.     Netskope's March 14, 2022 email reiterated that Fortinet's demand has only been $100,000,000 for a limited term license to Fortinet's entire portfolio.

160.     Netskope's March 14, 2022 email reiterated that Fortinet had not provided any objective evidence of infringement or license valuation.

161.     Netskope's March 14, 2022 email asked to understand licensing models and valuation of non-exclusive licenses that Fortinet might accept so Netskope can provide a reasonable counter offer.

162.     Netskope's March 14, 2022 email reiterated its commitment to work towards a business resolution.

163.     Fortinet responded on March 14, 2022.

164.     Fortinet's March 14, 2022 email asked if Netskope needed anything in advance of the call to make a specific proposal.

165.     Fortinet's March 14, 2022 email did not identify the patent claims Fortinet contended were infringed.

166.     Fortinet's March 14, 2022 email did not identify any Netskope products that allegedly infringed Fortinet's patents.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

167. Fortinet's March 14, 2022 email did not provide a claim chart.

168. Fortinet's March 14, 2022 email did not provide any quantitative basis for Fortinet's financial demands.

169. On March 21, 2022, the parties had a call.

170. During the March 21, 2022 call, Fortinet asked for Netskope's revenue.

171. During the March 21, 2022 call, Fortinet expressed its intention to provide a formula into which Netskope's revenue could be input to calculate what Fortinet believed was an appropriate royalty.

172. During the March 21, 2022 call, Netskope indicated its assumption that the competitor who had paid Fortinet nine figures for a limited term license was Palo Alto Networks.

173. During the March 21, 2022 call, Fortinet did not deny that the competitor who had paid Fortinet nine figures for a limited term license was Palo Alto Networks.

174. During the March 21, 2022 call, Netskope proposed different ways to resolve the dispute, including a covenant not to sue or a standstill.

175. During the March 21, 2022 call, Fortinet responded that it would require the same value for its portfolio—$100,000,000—regardless of form.

176. During the March 21, 2022 call, Netskope asked for the basis for Fortinet's $100,000,000 demand or how Fortinet had calculated that amount.

177. During the March 21, 2022 call, Fortinet provided no basis for its $100,000,000 demand or explanation for how it had calculated that amount.

178. During the March 21, 2022 call, Fortinet did not identify the patent claims Fortinet contended were infringed.

179. During the March 21, 2022 call, Fortinet did not provide a claim chart or support for its infringement allegations.

180. During the March 21, 2022 call, Fortinet did not identify any Netskope products that allegedly infringed Fortinet's patents.

181. Netskope followed-up with Fortinet hours after the parties' call.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

182. Netskope's March 21, 2022 email stated Netskope's understanding that Fortinet was only offering a license to its entire portfolio.

183. Netskope's March 21, 2022 email reiterated that Netskope did not believe it infringed any of the patents Fortinet had identified.

184. Netskope's March 21, 2022 email expressed Netskope's willingness to negotiate a reasonable license fee to avoid litigation.

185. Fortinet responded on March 22, 2022.

186. Fortinet's March 22, 2022 email made a proposal based around a percentage of Netskope's revenue.

187. Fortinet's March 22, 2022 email threatened that any damages Fortinet would pursue in litigation would be greater than the amount Netskope would pay using Fortinet's proposed equation.

188. Fortinet's March 22, 2022 email did not identify the patent claims Fortinet contended were infringed.

189. Fortinet's March 22, 2022 email did not identify any Netskope products that allegedly infringed Fortinet's patents.

190. Fortinet's March 22, 2022 email did not provide a claim chart.

191. Fortinet's March 22, 2022 email did not provide any quantitative basis for Fortinet's financial demands.

192. Netskope responded on March 23, 2022.

193. Netskope's March 23, 2022 email expressed Netskope's disappointment in Fortinet's proposal.

194. Netskope's March 23, 2022 email explained that, based on Fortinet's 10-K filings, the structure and price of Fortinet's proposal was substantially more than Fortinet had accepted previously.

195. Netskope's March 23, 2022 email stated that Netskope could not accept Fortinet's high licensing demand.

196.    Netskope's March 23, 2022 email said that Netskope is a business and is reasonable.

197.    Netskope's March 23, 2022 email explained that offers like the one Fortinet made do not leave Netskope any ability to respond productively.

198.    Netskope emailed Fortinet again on March 24, 2022.

199.    Netskope's March 24, 2022 email explained that, after careful consideration, Netskope had decided to file a declaratory judgment action of noninfringement.

200.    Netskope's March 24, 2022 email expressed Netskope's openness to continue discussing a business resolution with Fortinet.

201.    Netskope's March 24, 2022 email said that Netskope welcomed any reasonable proposals.

202.    Netskope's March 24, 2022 email said that it appeared Fortinet had no intention of being reasonable based, at least in part, on Fortinet's latest demands.

203.    Netskope's March 24, 2022 email said that it appeared Fortinet had no intention of being reasonable based, at least in part, on Fortinet refusing to provide evidence of infringement.

204.    Netskope's March 24, 2022 email said that it appeared Fortinet had no intention of being reasonable based, at least in part, on Fortinet refusing to provide any license valuation.

205.    Netskope's March 24, 2022 email expressed that Netskope felt it had no alternative but to ask a court to clear its name so it could freely operate.

206.    Fortinet claims to own all rights, title, and interest in the Patents-in-Suit.

207.    Given Fortinet's unambiguous statements that Netskope is infringing Fortinet's patents, including the Patents-in-Suit, and Fortinet's repeated threats of litigation, Netskope has a reasonable apprehension that Fortinet will commence litigation against Netskope.

208.    Despite Fortinet's infringement claims, Netskope does not infringe, nor has it infringed, any claim of the Patents-in-Suit.

209.    An actual case or controversy exists between Netskope and Fortinet regarding whether Netskope infringes the Patents-in-Suit.  Fortinet's allegations have created a real and immediate controversy between Netskope and Fortinet regarding whether the Netskope's

products infringe any claim(s) of the Patent-in-Suit.  Fortinet's threatening statements and conduct show it is highly likely that it will assert infringement of the Patent-in-Suit against Netskope.

210.    The facts and allegations recited show there is a real, immediate, and justiciable controversy.  A judicial declaration is necessary to determine the respective rights of the parties regarding the Patents-in-Suit and whether Netskope's products infringe the Patents-in-Suit. Netskope seeks a judicial declaration that it does not infringe the Patent-in-Suit.

## THE PARTIES

211.    Netskope, Inc. is a Delaware corporation with its principal place of business at 2445 Augustine Drive, Suite 301, Santa Clara, California 95054.

212.    On information and belief, Fortinet, Inc. is a Delaware corporation with its principal place of business at 899 Kifer Road, Sunnyvale, California 94086-5205.

## JURISDICTION AND VENUE

213.    This is an action for a declaration under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that neither Netskope nor its products infringe any claim of the Patents-in-Suit under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

214.    This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. §§ 1331 and 1338(a) because this Court has exclusive jurisdiction over declaratory judgment claims arising under the patent laws of the United States.  *See* 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

215.    This Court has personal jurisdiction over Fortinet at least because of its continuous and systematic contacts within the State of California and this District.  As noted above, Fortinet's principal place of business is located within the District and it has been registered to do business in the State of California since at least December 14, 2000, as shown on the California Secretary of State website.

216.    Fortinet is also subject to specific personal jurisdiction in this District because it has undertaken enforcement activities from this District and accused Netskope, a resident of this District, of infringement.

217.    Fortinet has purposely directed its enforcement activities on the Patents-in-Suit to at least one resident of this District and has done so in this District, and has established sufficient minimum contacts to subject it to personal jurisdiction here.

218.    Exercising personal jurisdiction over Fortinet does not offend traditional notions of fairness and substantial justice due to Fortinet's substantial presence and activities in this District.

219.    Venue in this District is proper under 28 USC §§ 1391(b)(1) and 1391(b)(2) at least because Fortinet maintains its principal place of business in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Fortinet purposefully directed activities to this District.

220.    An actual and justiciable controversy exists under 28 U.S.C. §§ 2201-2202 between Netskope and Fortinet as to whether the Patents-in-Suit are infringed by Netskope's products.

## INTRADISTRICT ASSIGNMENT

221.    This is an intellectual property action subject to district-wide assignment under Civil Local Rules 3-2(c).

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment that Netskope Does Not Infringe the '301 Patent)

222.    Netskope repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

223.    Fortinet has alleged and continues to allege that Netskope infringes the '301 Patent, which relates to "[a] forensic analysis method performed in respect of an endpoint device connected to a computer network."  ('301 patent at Abstract.)

224.    Fortinet has asserted that Netskope has "full knowledge of infringement."

225.    While Fortinet has refused to specifically identify a product that infringes the '301, Netskope believes any infringement allegation from Fortinet would relate to Netskope's behavior analytics and/or anomalies capabilities.

226.    Netskope does not infringe any claim of the '301 Patent.

COMPLAINT FOR DECLARATORY
                                                JUDGMENT OF NON-INFRINGEMENT

227.    Netskope and its products have not and do not directly or indirectly infringe any claim of the '301 Patent.

228.    Netskope and its products have not and do not infringe any claim of the '301 Patent literally or under the doctrine of equivalents.

229.    Declaratory relief is necessary and appropriate so that Netskope may ascertain its rights regarding the '301 Patent.

230.    In view of the facts and allegations set forth above, there is an actual, justifiable, substantial, and immediate controversy between Netskope and Fortinet on whether Netskope infringes any claim of the '301 Patent.

231.    For the reasons set forth above, Netskope respectfully requests that this Court declare that Netskope does not directly or indirectly infringe, nor has it directly or indirectly infringed, any claim of the '301 Patent, either literally or under the doctrine of equivalents.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment that Netskope Does Not Infringe the '734 Patent)

232.    Netskope repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

233.    Fortinet has alleged and continues to allege that Netskope infringes the '734 Patent, which relates to "[m]ethods and systems for Data Leak Prevention (DLP) in a private network." ('734 Patent at Abstract.)

234.    Fortinet has asserted that Netskope has "full knowledge of infringement."

235.    While Fortinet has refused to specifically identify a product that infringes the '734 Patent, Netskope believes any infringement allegation from Fortinet would relate to Netskope's Data Loss Prevention capabilities.

236.    Netskope does not infringe any claim of the '734 Patent.

237.    Netskope and its products have not and do not directly or indirectly infringe any claim of the '734 Patent.

238.    Netskope and its products have not and do not infringe any claim of the '734 Patent literally or under the doctrine of equivalents.

239.   Declaratory relief is necessary and appropriate so that Netskope may ascertain its rights regarding the '734 Patent.

240.   In view of the facts and allegations set forth above, there is an actual, justifiable, substantial, and immediate controversy between Netskope and Fortinet on whether Netskope infringes any claim of the '734 Patent.

241.   For the reasons set forth above, Netskope respectfully requests that this Court declare that Netskope does not directly or indirectly infringe, nor has it directly or indirectly infringed, any claim of the '734 Patent, either literally or under the doctrine of equivalents.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment that Netskope Does Not Infringe the '282 Patent)

242.   Netskope repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

243.   Fortinet has alleged and continues to allege that Netskope infringes the '282 Patent, which relates to "[m]ethods and systems for Data Leak Prevention ( DLP ) in an enterprise network." ('282 Patent at Abstract.)

244.   Fortinet has asserted that Netskope has "full knowledge of infringement."

245.   While Fortinet has refused to specifically identify a product that infringes the '282, Netskope believes any infringement allegation from Fortinet would relate to Netskope's Data Loss Prevention capabilities.

246.   Netskope does not infringe any claim of the '282 Patent.

247.   Netskope and its products have not and do not directly or indirectly infringe any claim of the '282 Patent.

248.   Netskope and its products have not and do not infringe any claim of the '282 Patent literally or under the doctrine of equivalents.

249.   Declaratory relief is necessary and appropriate so that Netskope may ascertain its rights regarding the '282 Patent.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

250.    In view of the facts and allegations set forth above, there is an actual, justifiable, substantial, and immediate controversy between Netskope and Fortinet on whether Netskope infringes any claim of the '282 Patent.

251.    For the reasons set forth above, Netskope respectfully requests that this Court declare that Netskope does not directly or indirectly infringe, nor has it directly or indirectly infringed, any claim of the '282 Patent, either literally or under the doctrine of equivalents.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment that Netskope Does Not Infringe the '151 Patent)

252.    Netskope repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

253.    Fortinet has alleged and continues to allege that Netskope infringes the '151 Patent, which relates to "[a] method for characterizing risk using an adaptive risk analysis engine." ('151 Patent at Abstract.)

254.    Fortinet has asserted that Netskope has "full knowledge of infringement."

255.    While Fortinet has refused to specifically identify a product that infringes the '151, Netskope believes any infringement allegation from Fortinet would relate to Netskope's risk assessment capabilities.

256.    Netskope does not infringe any claim of the '151 Patent.

257.    Netskope and its products have not and do not directly or indirectly infringe any claim of the '151 Patent.

258.    Netskope and its products have not and do not infringe any claim of the '151 Patent literally or under the doctrine of equivalents.

259.    Declaratory relief is necessary and appropriate so that Netskope may ascertain its rights regarding the '151 Patent.

260.    In view of the facts and allegations set forth above, there is an actual, justifiable, substantial, and immediate controversy between Netskope and Fortinet on whether Netskope infringes any claim of the '151 Patent.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

261.    For the reasons set forth above, Netskope respectfully requests that this Court declare that Netskope does not directly or indirectly infringe, nor has it directly or indirectly infringed, any claim of the '151 Patent, either literally or under the doctrine of equivalents.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment that Netskope Does Not Infringe the '601 Patent)

262.    Netskope repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

263.    Fortinet has alleged and continues to allege that Netskope infringes the '601 Patent, which relates to "[a] system and method for providing a virtual perimeter through distributed points of presence."  ('601 Patent at Abstract.)

264.    Fortinet has asserted that Netskope has "full knowledge of infringement."

265.    While Fortinet has refused to specifically identify a product that infringes the '601, Netskope believes any infringement allegation from Fortinet would relate to Netskope's edge-based network capabilities.

266.    Netskope does not infringe any claim of the '601 Patent.

267.    Netskope and its products have not and do not directly or indirectly infringe any claim of the '601 Patent.

268.    Netskope and its products have not and do not infringe any claim of the '601 Patent literally or under the doctrine of equivalents.

269.    Declaratory relief is necessary and appropriate so that Netskope may ascertain its rights regarding the '601 Patent.

270.    In view of the facts and allegations set forth above, there is an actual, justifiable, substantial, and immediate controversy between Netskope and Fortinet on whether Netskope infringes any claim of the '601 Patent.

271.    For the reasons set forth above, Netskope respectfully requests that this Court declare that Netskope does not directly or indirectly infringe, nor has it directly or indirectly infringed, any claim of the '601 Patent, either literally or under the doctrine of equivalents.

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

1

**SIXTH CLAIM FOR RELIEF**

2

**(Declaratory Judgment that Netskope Does Not Infringe the '941 Patent)**

3      272.    Netskope repeats and realleges each and every allegation contained in the

4    preceding paragraphs as if fully set forth herein.

5      273.    Fortinet has alleged and continues to allege that Netskope infringes the '941

6    Patent, which relates to "systems and methods for centrally managed host and network firewall

7    services." ('941 Patent at Title.)

8      274.    Fortinet has asserted that Netskope has "full knowledge of infringement."

9      275.    While Fortinet has refused to specifically identify a product that infringes the '941,

10   Netskope believes any infringement allegation from Fortinet would relate to Netskope's cloud

11   traffic inspection and/or edge-based network capabilities.

12     276.    Netskope does not infringe any claim of the '941 Patent.

13     277.    Netskope and its products have not and do not directly or indirectly infringe any

14   claim of the '941 Patent.

15     278.    Netskope and its products have not and do not infringe any claim of the '941

16   Patent literally or under the doctrine of equivalents.

17     279.    Declaratory relief is necessary and appropriate so that Netskope may ascertain its

18   rights regarding the '941 Patent.

19     280.    In view of the facts and allegations set forth above, there is an actual, justifiable,

20   substantial, and immediate controversy between Netskope and Fortinet on whether Netskope

21   infringes any claim of the '941 Patent.

22     281.    For the reasons set forth above, Netskope respectfully requests that this Court

23   declare that Netskope does not directly or indirectly infringe, nor has it directly or indirectly

24   infringed, any claim of the '941 Patent, either literally or under the doctrine of equivalents.

25

**PRAYER FOR RELIEF**

26     Netskope respectfully requests the following relief:

27     A.      That the Court enter a judgment declaring that Netskope has not infringed and

28   does not infringe any claim of the '301 Patent;

COMPLAINT FOR DECLARATORY
JUDGMENT OF NON-INFRINGEMENT

1   B.   That the Court enter a judgment declaring that Netskope has not infringed and

2   does not infringe any claim of the '734 Patent;

3   C.   That the Court enter a judgment declaring that Netskope has not infringed and

4   does not infringe any claim of the '282 Patent;

5   D.   That the Court enter a judgment declaring that Netskope has not infringed and

6   does not infringe any claim of the '151 Patent;

7   E.   That the Court enter a judgment declaring that Netskope has not infringed and

8   does not infringe any claim of the '601 Patent;

9   F.   That the Court enter a judgment declaring that Netskope has not infringed and

10  does not infringe any claim of the '941 Patent;

11  G.   That the Court declare that this case is exceptional under 35 U.S.C. § 285 and

12  award Netskope its attorneys' fees, costs, and expenses incurred in this action;

13  H.   That the Court award Netskope any and all other relief to which Netskope may

14  show itself to be entitled; and

15  I.   That the Court award Netskope any other relief as the Court may deem just,

16  equitable, and proper.

17  ## JURY DEMAND

18  Netskope hereby demands a jury trial on all issues and claims so triable.

19  DATED: March 24, 2022                    **PERKINS COIE LLP**

20

21                                          By: */s/ Thomas N. Millikan*

22                                              Thomas N. Millikan, Bar No. 234430
                                                TMillikan@perkinscoie.com
                                                Joseph P. Reid, Bar No. 211082
23                                              JReid@perkinscoie.com
                                                Andrew N. Klein, Bar No. 300221
24                                              AKlein@perkinscoie.com

25                                              Attorneys for Plaintiff
26                                              Netskope, Inc.

27

28

-27-                                    COMPLAINT FOR DECLARATORY
                                        JUDGMENT OF NON-INFRINGEMENT